1    **TRANSCRIBED FROM DIGITAL RECORDING**

2

3                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
4                              EASTERN DIVISION

      UNITED STATES OF AMERICA,            )
5                                          )
                      Plaintiff,           )
6                                          )
                      vs.                  )  No. 08 CR 934
7                                          )
      JOHN B. OHLE, III,                   )  Chicago, Illinois
8                                          )  November 14, 2008
                      Defendant.           )  4:03 P.M.
9
              TRANSCRIPT OF PROCEEDINGS – Removal Hearing
10       BEFORE THE HONORABLE SUSAN E. COX, Magistrate Judge

11    APPEARANCES:

12

      For the Government:        HON. PATRICK J. FITZGERALD
13                               219 South Dearborn Street
                                 Chicago, Illinois  60604
14                               BY:  MS. MAUREEN E. MERIN

15    For the Defendant:         MR. STEVEN D. BLANC
                                 825 Green Bay Road
16                               Suite 250
                                 Wilmette, Illinois  60091
17

18    ALSO PRESENT:              Mr. James K. Wheatley
                                 United States Pretrial Officer
19

20               PAMELA S. WARREN, CSR, RPR
                      Official Court Reporter
21               219 South Dearborn Street
                          Room 1928
22               Chicago, Illinois   60604
                      (312) 294-8907
23

24    **NOTE:  Please notify of correct speaker identification.**
      **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
      **UNINTELLIGIBLE.**
25

1    (Proceedings held in open court:)

2         THE CLERK:  08 CR 934, United States of America versus

3    John B. Ohle, III.

4         You may be seated.

5         MR. BLANC:  You can sit.

6         THE COURT:  No, he should come on up.  Is that

7    Mr. Ohle?

8         MR. BLANC:  Yes.

9         THE COURT:  Yes, please come up.

10        MR. BLANC:  Good afternoon, Judge.

11        THE COURT:  Stand behind the podium, sir, if you

12   would.  Thank you.

13        MR. BLANC:  My name is Steve Blanc --

14        THE COURT:  Go -- just go ahead.

15        MR. BLANC:  -- and I represent John Ohle.

16        THE COURT:  Okay.

17        MS. MERIN:  Good afternoon, your Honor.  Maureen

18   Merin, M-e-r-i-n, on behalf of the United States.

19        THE COURT:  Good morning.

20        MR. WHEATLEY:  James Wheatley with U.S. Pretrial

21   Services.

22        THE COURT:  Good afternoon.

23        And good afternoon to you, Mr. Ohle.

24        THE DEFENDANT:  Good afternoon.

25        THE COURT:  You have an appearance form?

1    MR. BLANC:  No, I do not --

2    THE CLERK:  (Unintelligible).

3    MR. BLANC:  -- but I will.

4    THE COURT:  Are you privately retained?

5    MR. BLANC:  Yes.

6    THE COURT:  Okay.

7    THE CLERK:  Is it S-t-e-v-e-n?

8    MR. BLANC:  That's correct.

9    THE CLERK:  Thank you.

10    MR. BLANC:  B-l-a-n-c is the last name.

11    THE CLERK:  Thank you.

12    THE COURT:  Okay.  Are we ready?

13    MR. BLANC:  Yes.  If it is all right, can I fill this

14 out afterwards?

15    THE CLERK:  Yes.

16    THE COURT:  Sure.

17    MR. BLANC:  Thank you.

18    THE COURT:  The purpose of the hearing today,

19 Mr. Ohle, is to inform you of the charges pending you against

20 you, inform you of rights which are important to you, and to

21 set and describe the circumstances of your release from custody

22 pending further court proceedings in this case if I deem it to

23 be appropriate.  You will not be called upon to answer the

24 charge at this time.

25    When was Mr. Ohle taken into custody, Ms. Merin?

1    MS. MERIN:  Approximately noon today, your Honor.

2    THE COURT:  All right.  Now I want to go over with you

3 rights which are important to you, Mr. Ohle.  First, you are

4 not required to make any statement.  If you have made a

5 statement, you need not say anything else.  If you choose to

6 make a statement, you may stop at any time.  But keep in mind

7 any statement made by you can be used against you.

8    Do you understand what I have just explained to you?

9    THE DEFENDANT:  Yes, ma'am.

10   THE COURT:  I also want to advise you that you have

11 the right to counsel and to confer with your counsel at every

12 critical stage of this criminal proceeding.  What that means is

13 if at any time during this hearing or any other hearings you

14 might have you have a question you need to ask your lawyer, you

15 just let me or any other judge know, and they will stop the

16 hearing and give you the opportunity to do that.

17   Do you understand that?

18   THE DEFENDANT:  Yes, ma'am.

19   THE COURT:  Okay.  If you are unable to afford an

20 attorney, an attorney will be appointed to represent you at no

21 cost to yourself.  You also have the right, which you have

22 exercised here, to retain counsel of your own choice.

23   You also have the right to waive the assistance of

24 counsel and to represent yourself if you voluntarily and

25 intelligently elect to do so.

1    You have the right to be represented by your lawyer

2  during any questioning by governmental authorities.

3    Do you fully understand your rights concerning

4  counsel?

5    THE DEFENDANT:  Yes, ma'am.

6    THE COURT:  All right.  Could you place Mr. Ohle under

7  oath, please?

8    THE CLERK:  Yes.

9    (Defendant sworn.)

10    THE COURT:  All right.  The only questions I'm going

11  to ask you, sir, are your full name, your age, and your

12  birthdate.

13    Okay.  So let's start with your full name.

14    THE DEFENDANT:  John Brewster Ohle, III.  My birthdate

15  is December 21st, 1967, and --

16    THE COURT:  That makes you how old?

17    THE DEFENDANT:  I'm 40.

18    THE COURT:  Okay.  Ms. Merin, has the defendant and

19  the defendant's counsel been provided a copy of the affidavit

20  of indictment and removal proceedings as well as the attached

21  indictment from the Southern District of New York?

22    MS. MERIN:  Yes, they have, your Honor.  And I would

23  just note for the record, although the indictment indicates it

24  was filed under seal, that seal was lifted this morning --

25    THE COURT:  Thank you.

1    MS. MERIN:  -- in the Southern District of New York.

2    THE COURT:  Okay.  Would you state -- I know that

3  there are several charges.  But would you summarize briefly

4  what the charges are and then the maximum possible penalty.

5    MS. MERIN:  Yes, your Honor.  He's been charged,

6  Mr. Ohle, the defendant, has been charged with a violation of

7  Title 18, United States Code, Section 371, for the offense of

8  conspiracy to impede the functions of the Internal Revenue

9  Service to evade income taxes in violation of Title 26, United

10  States Code, Section 7201, to assist in the presentation to the

11  IRS of materially false and fraudulent tax returns in violation

12  of Title 26, United States Code, Section 7206(2).

13    He's also been indicted on counts of violation of

14  Title 26, United States Code, Section 7201, and Title 18,

15  United States Code, Section 2, for the offense of evasion of

16  income tax.

17    An additional count of conspiracy under Title 18,

18  United States Code, Section 371, for wire -- for conspiracy to

19  commit wire fraud, conspiracy to evade income tax, and

20  conspiracy to assist in the presentation to the United States

21  of materially false returns, and also to submit fraudulent

22  returns to the IRS.

23    Finally, he's been indicted on counts of a violation

24  of Title 26, United States Code 7212(a), for the offense of

25  obstructing and impeding the administration of the Internal

1    Revenue laws.

2          The penalty is -- for the Title 26 counts, your Honor,

3    are $100,000 fine and three years's imprisonment.

4          THE COURT:  Okay.

5          MS. MERIN:  The maximum penalties for the conspiracy

6    charged under Title 18, Section 371, is five years's

7    imprisonment and a maximum fine of $250,000 and three years of

8    supervised release.

9          THE COURT:  Thank you.

10          Mr. Ohle, do you understand the charges that are

11    pending against you?

12          Do you have any questions you want to ask your

13    attorney right now?

14          THE DEFENDANT:  No.

15          THE COURT:  Okay.  So do you understand generally what

16    you have been charged with?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  Do you understand the nature of the

19    maximum penalty provided for those charges?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  Now because this is a removal

22    proceeding, before I can order your return to the Southern

23    District of New York, you have the right to what is called an

24    identity hearing, which means we would have a hearing, if you

25    so choose, to establish that you in fact are the same John Ohle

1  that's the person named in this indictment.

2      Do you wish to have such a hearing, counsel?

3      MR. BLANC:  No.

4      THE COURT:  All right.  I also want to advise you of

5  the potential for having your case transferred to this district

6  for this disposition.  If you wanted such a transfer, you would

7  have to state in writing that you did and that you also were

8  willing to plead guilty or no contest and to waive trial in the

9  Southern District of New York and to consent to disposition of

10  this case in the Northern District of Illinois.

11      And, again, before that can be allowed, both the

12  United States Attorneys for the Southern District of New York

13  and the Northern District of Illinois would have to agree.

14      Let's now turn to the issue of bond pending further

15  proceedings.  What's the government's position, Ms. Merin?

16      MS. MERIN:  The government's position is defendant

17  should be detained because he presents a serious risk of

18  flight.  It is our belief, given the defendant's financial

19  resources, his history of recent foreign travel and frequent

20  foreign travel, and the -- and considering the evidence that

21  has been accumulated and underlies some of the allegations in

22  the indictment, has multiple homes, multiple bank accounts,

23  multiple resources that are held in trust, some of the

24  allegations, and they are allegations in the indictment, but,

25  nonetheless, indicate that defendant has been underreporting

his income to the IRS by half a million dollars over a period of years. That he has executed transfers of money in the hundreds of thousands of dollars to execute his scheme, and that he -- he has these type of resources where should he choose to flee, he is facing forfeiture of his home in Wilmette, of his other home in New Orleans, of significant trusts that contain sports memorabilia --

THE COURT: Uh-huh.

MS. MERIN: -- that have a distinct value. The intended loss to the IRS is in the hundreds of millions of dollars. And the forfeiture allegation alone is $1.7 million dollar.

It is the government's position, and in communication with the attorneys in the Southern District of New York, whose case this is, that defendant should be detained unless he can post a secured bond in the range of 1 million or over -- 1 million -- $1.2 million that would adequately assure us that he would not flee given this -- the gravity of the charges against him.

THE COURT: Counsel.

MR. BLANC: Well, with all due respect, this case is a -- for bond we're talking about an issue of flight risk. The investigation has been going on for -- I'm not privy to exact terms -- but for years.

THE COURT: Uh-huh.

1          MR. BLANC:  Mr. Ohle has represented -- had

2   representation in my -- with me, with previous criminal defense

3   attorney, and currently with Mr. David Spears in New York.

4          He's answered all correspondence.  He -- Mr. Spears

5   has dealt most recently with the U.S. Attorney's Office in New

6   York, cooperated to the extent they could with the

7   investigation.

8          Mr. Ohle hasn't gone anywhere in four years.  He has a

9   -- three children, one a 19-month-old adopted child that's home

10  with his wife here in Wilmette who is -- they are members of

11  the church.  He has two other children, one age eight, one age

12  12.  They go to St. Joseph's School, and they are active in the

13  church.  He is incredibly active in the community here in

14  Wilmette.  He has shown no flight risk ever in his life.

15         The travel that counsel makes reference to is a -- for

16  the most part an annual international travel that they do with

17  their family where they bring in-laws, their kids, whether it

18  is a ski vacation, whether it is going to the football game in

19  London.  They return immediately thereafter.

20         He's got a practice here in -- which is his only

21  source of -- of real income.

22         THE COURT:  How does he make his living?

23         MR. BLANC:  He's an attorney.  He's a partner in the

24  law firm which is located here in Chicago.

25         He's not going anywhere.

1    THE COURT:  Well, here's the thing.  The only issue

2  before me is whether he is transported to the Northern -- or,

3  I'm sorry -- the Southern District of New York in custody or

4  whether he's released on bond for that.

5        I assume from what you are saying that you wish to

6  have a detention hearing.  I'm not going to make any decision

7  about detention until this individual is thoroughly interviewed

8  by the pretrial service report, and I have a report.  I can't

9  simply go on unverified information, and I'm not going to do

10  that.

11        You have a couple of options.  I mean, you can waive

12  your right to detention hearing before me and re-raise it in

13  New York where the charges are pending.  We can go forward with

14  the hearing here in Chicago to determine how he gets to New

15  York.  It is basically your call.

16        The government has the right to, up to three days, to

17  prepare for a detention hearing.  You have the right to have a

18  detention hearing within five days.

19        It is -- but I'm not going to release anyone until I

20  have had an -- this individual has been interviewed and I have

21  a report from Pretrial Services.

22        MR. BLANC:  Well, it is my understanding he has been

23  interviewed.

24        THE COURT:  I -- I need to see the report.

25        MR. BLANC:  Can we take testimony from Pretrial

```
1   Services --
2            THE COURT:  No --
3            MR. BLANC:  -- as part of --
4            THE COURT:  -- you may not.  No.
5            MR. BLANC:  Because it puts us -- I mean, he has got
6   -- he has got a little --
7            THE COURT:  It is not -- I will tell you something
8   given that he would have to post property -- it is now 4:17.
9            When is the last -- I mean, are you --
10           MR. BLANC:  No, I realize it -- your Honor, it is
11  impossible --
12           THE COURT:  You know --
13           MR. BLANC:  -- to post it by 4:30.
14           THE COURT:  It is today, right.  So that gives our
15  Pretrial Services officer time to prepare the report that I
16  need.
17           I mean I can take this issue up on Monday if you'd
18  like.  As soon as Monday.  I mean, I have --
19           MS. MERIN:  That's fine, your Honor.  Whatever time on
20  Monday.
21           THE COURT:  I mean, but the government -- the
22  government has a statutory right of three days.
23           MS. MERIN:  We would just ask that --
24           THE COURT:  I assume that -- I assume that you're
25  exercising your right --
```

1           MS. MERIN:  That's right.

2           THE COURT:  -- if you have moved for detention.

3           MS. MERIN:  That's right, your Honor.  We would just

4 ask that whatever hearing be held on Monday be an amount of

5 time where we could review the Pretrial Services --

6           THE COURT:  Well, see, that's the thing --

7           MS. MERIN:  -- report.

8           THE COURT:  -- because everybody -- the way it works

9 is he does his report.  You have a chance to review it,

10 challenge anything, check it out.

11           The government has that same right.

12           And then I review it, and I make determinations based

13 on what I see.

14           MR. BLANC:  No, I understand that, your Honor.

15           THE COURT:  So --

16           MR. BLANC:  I'm only going from my experience in cases

17 similar to this in the tax world --

18           THE COURT:  Right.

19           MR. BLANC:  -- where we have an individual who has

20 been under investigation, has able counsel, has been

21 communicating, and they go in and arrest him at noon on a

22 Friday --

23           MS. MERIN:  Your Honor --

24           THE COURT:  I can't -- none of that, frankly, has --

25           MR. BLANC:  I understand the position you're in --

1    THE COURT:  I understand your frustration.  But the

2 bottom line is he is now, you know, under arrest.  There is an

3 indictment pending in the Southern District of New York.  The

4 Southern District of New York has obviously told the assistant

5 U.S. Attorney that they would like him to be detained pending

6 further proceedings in New York.  She's made the motion.  Now

7 we go forward with what needs to be done to have the hearing.

8    So let's set the time and -- and are we going to have

9 enough time?  Are you going to have enough time if I would

10 consider a bond to marshal whatever you need to do?  Because

11 the time we set for this should be a time to allow everyone to

12 get everything they need to get done in order to have it

13 happen.

14    And I'm not -- I don't want to set it on Monday

15 morning if that's a futile --

16    MS. MERIN:  Okay.

17    THE COURT:  And I want to hear from you too -- I mean,

18 this sounds like it might be a thoroughly complicated

19 investigation.

20    When do you think you'd be able to get a report to me?

21    MR. WHEATLEY:  Judge, I can get it done when you set

22 the hearing (unintelligible).

23    MR. BLANC:  Monday morning.

24    (Unintelligible colloquy.)

25    MS. MERIN:  I just -- keep in mind, I mean, you know,

1    our position is detention.  Our back-up position is release

2    with secured property.  Those properties need to get checked

3    out, as I'm sure you're familiar if anybody has posted bond --

4             THE COURT:  Right.

5             MS. MERIN:  -- in the Northern District.  We still

6    need time where we have to --

7             THE COURT:  Yeah, I don't --

8             MS. MERIN:  -- we're not going to approve this

9    security --

10            THE COURT:  I don't think it is possible for you to

11   get this -- I mean, it doesn't sound like --

12            MS. MERIN:  Right.

13            THE COURT:  If you're talking about posting property

14   and giving time for the government to figure out whether that

15   property is good property --

16            MS. MERIN:  We're still going to need

17   (unintelligible).

18            THE COURT:  -- it don't sound like Monday or even

19   Tuesday makes a lot of sense.

20            But you tell me.  I'm at your disposal.

21            MR. BLANC:  Well, I have -- I'm -- I have been

22   a -- because you're telling me that the U.S. Attorney's Office

23   has got to basically check out the property, and so --

24            MS. MERIN:  Well --

25            THE COURT:  What I am telling you is under the statute

1  that governs my decision, the United States Attorney's Office,

2  the government, has a statutory right to three days once they

3  move for detention, not including the weekend.  You have a

4  right to five days.  That's how it works.

5       If you want to have the hearing on Monday morning, you

6  know, that's fine.  But it doesn't seem like that's going to be

7  the best use of our time.

8       MR. BLANC:  Well, that's why --

9       THE COURT:  But again --

10      MR. BLANC:  So I'm asking if we provide you a list of

11  the -- of the properties, I'm asking the government --

12      MS. MERIN:  There is a -- there is a complex set of

13  requirements, as I'm sure you're -- counsel, you have, in your

14  case taxes, have encountered before as to appraisals, as to

15  market worth.  It is not -- a secured bond is only as good as

16  the security.  If there is no actual security in the houses or

17  if the houses, like two of defendant's properties are named as

18  -- in the forfeiture allegation in the indictment, they're

19  essentially -- they are not too probative in terms of security.

20      MR. BLANC:  We're not talking -- we're not talking

21  about --

22      THE COURT:  All right.  You know what, this

23  negotiations doesn't need to occur in front of me.

24      MS. MERIN:  That's right, your Honor.

25      THE COURT:  What I need to do is find out from both

1    sets of counsel when they would like to proceed with the

2    detention hearing.  Tell me when you want to go.

3              And I think really, government, when would you be

4    ready, do you think?

5              MS. MERIN:  Realistically, your Honor, if the question

6    was to post secured bond --

7              THE COURT:  Uh-huh.

8              MS. MERIN:  -- I think we would not be ready to go

9    until at least the end of the day on Tuesday.

10             THE COURT:  Tuesday.

11             MS. MERIN:  So --

12             THE COURT:  Well, why don't I set it then for --

13             MR. BLANC:  I cannot do it on Tuesday.

14             THE COURT:  I'll set it for Wednesday morning.

15        (Unintelligible colloquy.)

16             THE COURT:  I can -- I really -- I have a

17    naturalization in the morning, and then I have a 10:00

18    o'clock.

19             I could see you at --

20             MR. BLANC:  Is there any way I can represent to you,

21    your Honor, that we will make him available on Wednesday so he

22    doesn't spend the weekend in custody?

23             THE COURT:  No, I -- I just want to go over this

24    again.  Once the government moves for detention and they have

25    presented evidence of risk of flight, they have a right to

1    three days.  Okay?  That's how the statute works.  I didn't

2    write the statute, but I have to apply it and follow it.

3            We'll have the hearing on Wednesday at 10:15.

4            Does that work?

5            THE CLERK:  I think so.

6            THE COURT:  I have got something criminal at 10:00,

7    but I think it is short.

8            MS. MERIN:  Okay.

9            THE COURT:  Okay.  So until that time, Mr. Ohle, you

10   will be held in custody.  We will take up the issue of your

11   bond on Wednesday at 10:15.

12           MS. MERIN:  Thank you, your Honor.

13           THE COURT:  All right?  Thank you.

14           MR. BLANC:  Thank you, your Honor.

15       (Which concluded the proceedings in the above-entitled

16   matter.)

17                           CERTIFICATE

18           I HEREBY CERTIFY that the foregoing is a true, correct

19   and complete transcript of the proceedings had at the hearing

20   of the aforementioned cause on the day and date hereof.

21

22   /s/Pamela S. Warren                    April 4, 2012
     Official Court Reporter                    Date
23   United States District Court
     Northern District of Illinois
24   Eastern Division

25